Joseph **CORSIGLIA**, Richard Corsiglia, Lina Smith, Laura De Cressey, and Olga Whitney, Heirs of the Estate of Antonio Corsiglia, Plaintiffs,

v.

**SUMMIT CENTER CORPORATION**, An Iowa Corporation; Disco Corporation, A Texas Corporation; and A. Abner Rosen and Abraham Kamber, Individually and Doing Business As Moday Realty Co., A Business Licensed Under the Laws of the State of New York, Defendants.

A. Abner **ROSEN** and Abraham Kamber, Individually and Doing Business as Moday Realty Co., A Business Licensed Under the Laws of the State of New York, Cross-Petitioners/Appellees,

v.

**SUMMIT CENTER CORPORATION**, An Iowa Corporation, Defendant to Cross-Petition/Appellant.

No. 83–449.

Court of Appeals of Iowa.

March 20, 1984.

Robert V.P. Waterman and C. Dana Waterman III, of Lane & Waterman, Davenport, for appellant.

J.A. Hellstrom and Robert D. Lambert of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees.

Michael S. Bennett and Gary M. Lane, of Berger & Lane, Davenport, for plaintiffs.

No appearance for defendant Disco Corp.

Heard by OXBERGER, C.J., and DONIELSON, and SACKETT, JJ.

OXBERGER, Chief Judge.

Defendant Summit Center Corporation appeals from an adverse declaratory judgment construing a series of lease and assignment documents. On appeal, Summit asserts: (1) its assignment of part of its leasehold to Disco transferred to Disco the duty to pay property taxes on the acres of land covered by the assignment, and Disco's assignment of its interest to Moday Realty in turn transferred the duty to Moday; (2) Moday should be barred, under the doctrines of laches and estoppel, from claiming that Summit should pay the taxes; and (3) this was an equitable proceeding, and review should be de novo. Appellees assert that the proceeding was at law, and review should be on error.

## I. Scope of Review

■ The rule is that the legal or equitable nature of a declaratory judgment procedure is to be determined by the pleadings, the relief sought and the nature of the case. *Northern Natural Gas Co. v. Forst,* 205 N.W.2d 692, 694 (1973). This case was tried in equity; therefore, our review is de novo. *Davidson v. Van Lengen,* 266 N.W.2d 436, 438 (Iowa 1978). We give weight to the fact findings of the trial court but are not bound by them. *See* Iowa R.App.P. 14(f)(7).

## II. Payment of Real Estate Taxes

In 1958 when Summit Center leased certain land from Antonio Corsiglia, the lease provided in part that Summit Center "shall pay all taxes assessed by the city of Bettendorf and Scott County, Iowa, or the State of Iowa, against said real estate..." In 1961 Summit assigned a portion of the leasehold to Disco, another commercial developer. In that second agreement, Summit retained a portion of its leasehold unto itself. In 1962 Disco, in turn, leased its interest to Moday Realty Company; Summit still retained the remainder portion of the leasehold. Since 1962 to the present, Moday has paid not only the real estate taxes on its leasehold, but paid the taxes on all the land leased by Summit from Corsiglia.

■ Summit relies on *Berg v. Ridgway,* 140 N.W.2d 95 (Iowa 1966), for the proposition that when "one accepts the assignment

of a lease he not only has the benefits of the lease but the burdens as well." *Id.* at 99. Therefore, Summit claims that the trial court erred in finding that the assignment of Summit Center's interest in the lease did not transfer the liability to pay all real estate taxes to the successor assignee, Moday Realty Company. We agree that a written acceptance of the lease binds the assignee to perform all provisions of the lease. *Id.* at 99. However, the general rule is that an assignee is bound for "the period of time he *occupies the premises.*" *Id.* at 99 (emphasis added). Moday never occupied the premises in question.

We do not foreclose the possibility that there may be a situation where an obligation arises without the assignee ever having occupied the premises. However, we do not believe this is such a situation.

 The extent of the obligations which are accepted by the assignee of the lease is a matter of contract. *Barker Development Co. v. Unibank, Etc.*, 314 N.W.2d 175, 178 (Iowa Ct.App.1981). As such, the extent of the obligations depends entirely upon the terms of the agreement in the particular case. *Id.* at 178. If an obligation accrues without occupancy or subsequent to occupancy by the assignee, such needs to be proved with certainty. *Cf.* at 178–79.

 We agree with the trial court that there was no language in the assignment instrument that specifically provided that the assignee would pay property taxes upon a portion of the leasehold retained by Summit Center. Absent lucid and unambiguous language expressing the clear intent of the parties, it is the court's duty to give effect to the language of the entire contract of assignment in accordance with commonly accepted and ordinary meaning. *Broyles v. Iowa Dept. of Social Services*, 305 N.W.2d 718, 721–22 (Iowa 1981).

 We believe it goes against the logic of commonly accepted and ordinary meaning to believe that someone would pay real estate taxes on property which that person had no control over and no interest in. The surrounding circumstances of this case prove that such was not the intent of Moday Realty. *See Broyles* at 721. Once Moday was alerted to the possibility that taxes were being paid on real estate outside of its lease, Moday's attorney began writing letters to various parties in an effort to correct the tax billing. Moday also proceeded to retain local counsel to assist in that effort.

Juxtaposing the fact that the original assignment stated that Summit "reserves unto itself *all its rights* as lessor in the lease with Standard Oil Company" and that Summit "retains unto itself the use of . . . 40,000 square feet," with the fact that Moday made clear its intent that it did not expect to pay taxes outside its leasehold, we find that the trial court properly ruled in this case (emphasis added). Therefore, our review of the evidence does not convince us that the assignment of lease to Moday Realty creates any obligation on Moday to pay taxes on those portions of property reserved and retained by Summit Center. .

### III. Estoppel by Acquiescence

 Summit claims that the trial court erred in finding that the affirmative defense of estoppel by acquiescence is not applicable. The rule is that the defense can apply where "a person knows or ought to know that [he] is entitled to enforce [his] right or to impeach a transaction and neglects to do so for such a time as would imply that [he] intended to waive or abandon [his] right." *Davidson v. Van Lengen*, 266 N.W.2d 436, 438 (Iowa 1978). Estoppel by acquiescence is based on an examination of the individual's actions who holds the right in order to determine whether the right has been waived. *Id.* at 439.

Summit states that it has established all of the elements of the defense per *Davidson v. Van Lengen, supra*, and *Anthony v. Anthony*, 204 N.W.2d 829 (Iowa 1973). However, we do not believe that these circumstances are governed by those cases.

In the former case the court found that the defendant-mother was estopped from enforcing back child support payments when there was no indication that she had ever sought to actively enforce those rights over a twenty-year period. In the latter case, even though the plaintiff-mother knew of her right to child support for seventeen years, she failed to pursue the right and led the defendant-father to believe that she intended to waive or abandon the right.

The case at bar can be distinguished. Here, Moday accepted the assignment in 1962; this action began in 1981. However, in 1973, one of Moday's tenants advised them that the tax bill covered land not within Moday's leasehold estate. Subsequently, throughout 1973 and up until April 1974, Moday made numerous inquiries concerning this tax assessment. In those inquiries, Moday not only questioned the propriety of the tax bill, but also the probability of success of any litigation which Moday may try to initiate.

 We do not speculate as to why the record is void of evidence from 1974 to 1981 concerning the tax assessment issue. It is, however, the burden of the party asserting estoppel to establish its elements by clear, convincing, and satisfying proof. *Dierking v. Bellas Hess Superstore*, 258 N.W.2d 312, 315 (Iowa 1977). We do not believe the proof submitted by Summit in this case is sufficient to trigger the application of estoppel by acquiescence, especially since Moday actively inquired into the possibility of an error or wrongdoing in 1973 and 1974. Therefore, since appellant Summit has failed to carry its burden, we must refuse to apply the doctrine of estoppel by acquiescence to the circumstances of this case.

### IV. Laches

 Summit contends that the trial court erred in finding that the affirmative defense of laches was not applicable to the case at bar. However, generally there can be no premise upon which the doctrine of laches may stand absent some wrong, such as breach of contract, with a subsequent action for redress. *Davenport Osteopathic Hospital Assn. v. Hospital Service*, 261 Iowa 247, 262, 154 N.W.2d 153, 162 (Iowa 1967). Therefore, even if we were to find that Moday was liable for payment of the taxes in question, at this point in time we fail to see how any wrong has occurred. The parties stipulated to the fact that from 1962 to the present date, Moday Realty has paid all of the real estate taxes on the land in question. As such there has been no breach in the assignment agreement. Accordingly, the doctrine of laches is not applicable to this case.

 But even assuming, *arguendo*, that the doctrine is considered, its application requires that we focus on the defendant's position and determine whether the delay harmed him or resulted in material prejudice. *Davidson* at 439. We believe that any delay on Moday's part in asserting a remedy could do nothing but enhance Summit's position. Summit retained two tracts of land under the leasehold; Summit received all benefits of the property retained; yet Summit did not pay any of the real estate taxes on the property. Summit argues that Moday seeks to procure a windfall by trying to transfer this obligation to Summit. The facts of the case render this contention meritless.

Therefore, since the record evinces no harm nor material prejudice, we find the ruling of the trial court to be proper.

AFFIRMED.